Jefferson T. Collins,
  Bar No. 016428
JONES, SKELTON & HOCHULI, P.L.C.
Suite 2700
40 North Central Avenue
Phoenix, AZ 85004
Fax 602.200.7825
Ph. 602.263.1700
jcollins@jshfirm.com

Brian Melendez,
  Minn. License No. 0223633
  (admitted pro hac vice)
BARNES & THORNBURG LLP
Suite 2800
225 South Sixth Street
Minneapolis, MN 55402-4662
Ph. 612.367.8734
Fax 612.333.6798
brian.melendez@btlaw.com

Attorneys for Defendant
  TD Bank USA, N.A.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Janelle M. Gephart, | No. 2:22-cv-01652-SMM |
|---|---|
| Plaintiff, | |
| v. | **TD DEFENDANTS' MOTION FOR FEES** |
| TD Bank USA, N.A.; et al., | |
| Defendants. | |

Defendant TD Bank USA, N.A., and former Defendant TD Bank, N.A., respectfully submit this claim under Federal Rule of Civil Procedure 54(d)(2) for attorney's fees under Rule 37(c)(2) and 28 U.S.C. § 1927, as more fully appears in the accompanying memorandum of points and authorities.

November 2, 2023.

BARNES & THORNBURG LLP

/s/ Brian Melendez

_____
Brian Melendez
Attorney for Defendant
   TD Bank USA, N.A.

2

Jefferson T. Collins,
    Bar No. 016428
JONES, SKELTON & HOCHULI, P.L.C.
Suite 2700
40 North Central Avenue
Phoenix, AZ 85004
Fax 602.200.7825
Ph. 602.263.1700
jcollins@jshfirm.com

Brian Melendez,
    Minn. License No. 0223633
    (admitted pro hac vice)
BARNES & THORNBURG LLP
Suite 2800
225 South Sixth Street
Minneapolis, MN 55402-4662
Ph. 612.367.8734
Fax 612.333.6798
brian.melendez@btlaw.com

Attorneys for Defendant
    TD Bank USA, N.A.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Janelle M. Gephart,<br><br>    Plaintiff,<br><br>v.<br><br>TD Bank USA, N.A.; et al.,<br><br>    Defendants. | No. 2:22-cv-01652-SMM<br><br>**TD DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR FEES** |

Defendant TD Bank USA, N.A., and former Defendant TD Bank, N.A., respectfully submit this memorandum in support of their claim for attorney's fees under Rule 37(c)(2) and 28 U.S.C. § 1927.

**Contents**

Eligibility ................................................................................................................... 4

    I.    Fed. R. Civ. P. 37(c)(2) ................................................................................ 5

    II.    28 U.S.C. § 1927 ........................................................................................ 5

Entitlement ................................................................................................................ 5

    I.    Factual and procedural background ............................................................ 5

        A.    Ms. Gephart and her attorneys knowingly pursued the wrong Defendant for months, despite the TD Defendants' repeated efforts to correct the misnomer — then they lied to the Court about it. ............. 5

        B.    Ms. Gephart and her attorneys substituted TD in as the Defendant, even though they knew that TD had a complete defense and that her claims were not viable. ...................................................................... 8

        C.    Ms. Gephart and her attorneys wasted the two-month discovery stay with a bootless accusation and demand. ............................................... 8

        D.    Trans Union's testimony corroborated TD's, but Ms. Gephart and her attorneys still refused to dismiss their claims. .................................... 9

        E.    Ms. Gephart and her attorneys forced TD and its designated witness to prepare for a 53-topic organizational deposition that they evidently never intended to take. ....................................................................... 10

        F.    Even as Ms. Gephart and her attorneys conceded TD's summary-judgment motion, they improperly sought to preclude TD from seeking fees. ................................................................................... 11

    II.    TD is entitled to fees under Rule 37(c)(2) for Ms. Gephart's failures without good reason to admit matters requested under Rule 36. ........................... 12

    III.    The TD Defendants are entitled to fees under 28 U.S.C. § 1927 because Ms. Gephart's attorneys multiplied these proceedings unreasonably and vexatiously. ............................................................................................. 13

Reasonableness of Requested Award ...................................................................... 16

Conclusion .............................................................................................................. 16

For this memorandum's purposes:

(a) "TD" means Defendant TD Bank USA, N.A., but does not include former Defendant TD Bank, N.A.;

(b) the "TD Defendants" means TD and former Defendant TD Bank, N.A.; and

(c) "Target" means TD's credit-card servicer Target Enterprise Services, Inc. (formerly known as Target Enterprise, Inc.).

Two days after filing this action, Ms. Gephart's attorneys learned that they sued the wrong Defendant — TD Bank, N.A., instead of TD Bank USA, N.A. (TD), which issued Ms. Gephart's credit-card account. They promised to correct the misnomer, but didn't. TD Bank, N.A., ended up having to file an answer, pleading that Ms. Gephart had sued the wrong Defendant. Ms. Gephart's attorneys still did nothing.

Three weeks later, the TD Defendants furnished a declaration to Ms. Gephart's attorneys establishing not only that TD Bank, N.A., was the wrong Defendant, but that TD — the real Party in interest — had a complete defense against Ms. Gephart's claims because TD had never received any notice with regard to the dispute alleged in her complaint. Absent such a notice from a consumer reporting agency, a furnisher cannot be liable for violating 15 U.S.C. § 1681s-2(b).

Ms. Gephart and her attorneys dragged the wrong Defendant, TD Bank, N.A., through four months of litigation before finally correcting their misnomer. Once TD was substituted in, they dragged TD through another six months of discovery and a summary-judgment motion while knowing that they lacked a viable claim.

LRCiv54.2 "does not apply. . . to claims for attorneys' fees and related expenses for violations of the Federal Rules of Civil Procedure or under 28 U.S.C. § 1927." LRCiv 54.2(a) (scope). The TD Defendants seek fees only under Federal Rule of Civil Procedure 37(c)(2) and under 28 U.S.C. § 1927 so, by its own terms, the local rule does not apply. For the Court's convenience, however, this memorandum generally follows the local rule's format.

**Eligibility**

This action was resolved on October 19, 2023, by an order "**dismissing** Defendant TD Bank **with prejudice**." (ECF Doc. 40 (Court's emphasis).)

Ms. Gephart claimed that TD violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), by failing to conduct a reasonable investigation into her credit-reporting dispute through Trans Union in February 2022 about how her bankruptcy was being reported. But neither TD nor its credit-card servicer Target ever received notice from Trans Union with regard to the dispute. Absent such a notice from a consumer reporting agency, a furnisher cannot be liable for violating 15 U.S.C. § 1681s-2(b). The order dismissing TD with prejudice thus resulted in TD prevailing against Ms. Gephart's claim, and prevailing on its affirmative defense of lack of notice of Ms. Gephart's dispute.

TD submits this claim under Rule 37(c)(2) and 28 U.S.C. § 1927 for its fees incurred from February 28, 2023, through this motion. Former Defendant TD Bank, N.A., also seeks fees under 28 U.S.C. § 1927 for the period from October 21, 2022, through February 28, 2023.

I. **Fed. R. Civ. P. 37(c)(2)**

Rule 37(c) provides that, if a party prevails on a denied request for admission, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
    (A)    the request was held objectionable under Rule 36(a);
    (B)    the admission sought was of no substantial importance;
    (C)    the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
    (D)    there was other good reason for the failure to admit.

Fed. R. Civ. P. 37(c)(2) (failure to admit).

II. **28 U.S.C. § 1927**

The federal statute on counsel's liability for excessive costs provides that

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (counsel's liability for excessive costs).

**Entitlement**

I. **Factual and procedural background.**

    A.    **Ms. Gephart and her attorneys knowingly pursued the wrong Defendant for months, despite the TD Defendants' repeated efforts to correct the misnomer — then they lied to the Court about it.**

This action was filed on September 28, 2022, naming TD Bank, N.A., as a Defendant. (ECF Doc. 1.) Two days later, on September 30, the TD Defendants' attorney Brian Melendez wrote to Ms. Gephart's attorney Alexander Taylor that

> the complaint names "TD Bank, N.A." as the Defendant, but refers to "a Target department store credit card serviced by TD Bank" (¶ 7). TD Bank

5

> USA, N.A., not TD Bank, N.A., issues the Target-branded credit card, and is the only TD entity involved with Target credit cards. TD Bank, N.A., is a separate TD affiliate that is not involved with Target credit cards. We are willing to consent to an amendment that corrects the misnomer. Please let me know whether you are willing to amend the complaint, or if we should plan to respond to the complaint in its current form.

(Melendez Decl., ¶ 6 at 2.) Ms. Gephart's attorney Marwan Daher responded that "we can correct this. However, I think[]it would behoove us to at least attempt to resolve this prior to your answer date as to avoid costly and protracted litigation," and demanded a payment. (*Id.*, ¶ 7 at 3.)

On October 21, 2022, Mr. Melendez wrote to Ms. Gephart's attorneys that TD had "completed its investigation of Ms. Gephart's claim, which concerns a Trans Union dispute in February–March 2022. TD never received notice of that dispute. I attach a declaration to that effect. Since notice of the dispute is a prerequisite to liability, we ask that Ms. Gephart dismiss her claim." (*Id.*, ¶ 8.) The October 21 email attached the Declaration of Susan L. Wolf, which confirmed not only that TD Bank, N.A., was the wrong Defendant, but that the proper Defendant — TD — never received notice of the subject dispute. (*Id.*, ¶ 9; Wolf Decl. [Melendez Decl., Ex. B], ¶¶ 6–8 at 2.)

On November 4, 2022, the summons and complaint were served on TD Bank, N.A. (ECF Doc. 5.) Ms. Gephart served TD Bank, N.A., in bad faith, since she had known for over a month that TD Bank, N.A., was the wrong Defendant. On November 28, since Ms. Gephart's attorneys had taken no action to correct the misnomer, TD Bank, N.A., served an answer, pleadeding that Ms. Gephart had sued the wrong Party. (TD Bank, N.A.'s Answer [ECF Doc. 7], ¶¶ 78–86 at 16.)

On January 16, 2023, the Parties' attorneys held a case-management conference in

which they discussed amending the complaint to drop TD Bank, N.A., and adding TD Bank USA, N.A. Ms. Gephart's attorneys promised that they would file an amended complaint that day or the next day. (Melendez Decl., ¶ 15 at 5.) They did not, and they ignored an email from Mr. Melendez following up on their promise. (*Id.*, ¶¶ 17–18.)

On January 20, 2023, the Court held a Rule 16 preliminary pretrial conference. When the Court asked Mr. Taylor about why he had not corrected the misnomer, Mr. Taylor — to whom Mr. Melendez had written about the misnomer in September 2022, to whom Mr. Melendez had sent Ms. Wolf's declaration in October 2022, who had been served with TD Bank N.A.'s answer in November 2022, to whom Mr. Melendez had again sent Ms. Wolf's declaration in January 2023, and who had filed the Parties' proposed case-management plan setting out TD Bank N.A.'s wrong-Party defense, (*id.*, ¶ 21 at 6) — claimed that he had learned about the misnomer only two days before:

```
        THE COURT:  Mr. Taylor, what steps have you taken to
   correct this?
        MR. TAYLOR:  Your Honor, I think we found out about
   this Wednesday.  Correct me if I have the date --
        MR. MELENDEZ:  No, absolutely not.
   ....
        MR. TAYLOR:  Your Honor, this is Alexander Taylor.  I
   apologize if I misdated -- misstated Mr. Melendez.  At earliest
   we found out about this this Monday.  The declaration was
   provided to us at least on my record Wednesday, which would be
   two days ago.
```
(Tr. [*id.*, Ex. E] at 7:6 – 8:2.) But despite what Mr. Taylor represented to the Court, he had been told on at least five prior occasions — in September 2022 (Melendez Decl., ¶ 6 at 2),

7

October 2022 (*id.*, ¶ 9 at 3), November 2022 (*id.*, ¶ 12 at 4), and twice in January 2023 (*id.*, ¶¶ 14–18 at 5) — that he had sued the wrong Defendant. He had also ignored his own promise to correct the misnomer before the Rule 16 conference. (*Id.*, ¶¶ 15, 17–18.)

B. **Ms. Gephart and her attorneys substituted TD in as the Defendant, even though they knew that TD had a complete defense and that her claims were not viable.**

On February 8, 2023, the Court granted the Parties' stipulation dropping TD Bank N.A. and substituting TD as a Defendant. (ECF Doc. 22; *see* Melendez Decl., ¶¶ 23–24, 26–27 at 7–8.) Ms. Gephart's attorneys had known for over three months, since Ms. Wolf's declaration in October 2022, that TD never received notice of Ms. Gephart's credit-reporting dispute through Trans Union. (Melendez Decl., ¶ 9 at 3.) But rather than admit that TD had a complete defense and that her claims were not viable, Ms. Gephart and her attorneys kept pursuing TD.

C. **Ms. Gephart and her attorneys wasted the two-month discovery stay with a bootless accusation and demand.**

The Court at the Rule 16 conference stayed discovery so that the Parties could discuss settlement (ECF Doc. 16) and, in response to TD's defense that it had received no notice of the subject dispute, suggested that

> I am not saying [TD] should pay any money necessarily, but maybe the Plaintiffs might be in a position to say: Okay. If we settle with TransUnion hypothetically, and I get a favorable result there, I am willing to dismiss your client if in fact you can show me you didn't receive a notice, or whatever it is.

(Tr. [Melendez Decl., Ex. E] at 14:18–23.)

Ms. Gephart had never made a demand on TD — only an October 3, 2022 demand

8

on TD Bank, N.A., before TD was a Party. The TD Defendants had rejected that October 2022 demand on October 21, and asked that Ms. Gephart dismiss her claims. But on March 6, 2023, Mr. Daher wrote to Mr. Melendez that "we have not heard back from you in regards to Plaintiff's demand here, which is controverted by the Judge's orders." (Melendez Decl., ¶ 28 at 8.) Mr. Melendez responded with a copy of the October 21, 2022 email rejecting Ms. Gephart's demand to TD Bank N.A., writing that "TD is not willing to pay Ms. Gephart when it has been reporting her account correctly all along. . . . If Ms. Gephart will dismiss her claim against TD with prejudice, then TD will waive any claim for costs or fees." (*Id.*, ¶ 29 at 8–9.) Mr. Daher wrote back that "we will have to wait until after discovery and depositions to ascertain whether Defendant received notice. . . . There is no way that Plaintiff can prove without discovery that Defendant did not receive notice of disputes . . . . Accordingly, we will not be dismissing this case." (*Id.*, ¶ 30 at 9.)

        D.    **Trans Union's testimony corroborated TD's, but Ms. Gephart and her attorneys still refused to dismiss their claims.**

Despite Mr. Daher's statement that "[t]here is no way that Plaintiff can prove without discovery that Defendant did not receive notice of disputes," Ms. Gephart and her attorneys never served any discovery on Trans Union. (Melendez Decl., ¶ 36 at 10.) But TD did, (*id.*, ¶ 34 at 9; *id.*, ¶ 41 at 11), and that discovery corroborated TD's lack-of-notice defense, (*id.*, ¶ 42 at 11; Wagner Decl. [Melendez Decl., Ex. P], ¶ 4 at 2). But when Mr. Melendez provided Trans Union's testimony to Ms. Gephart's attorneys, and again asked that they dismiss their claims, they again refused. (*Id.*, ¶¶ 45–46 at 12.)

9

E. **Ms. Gephart and her attorneys forced TD and its designated witness to prepare for a 53-topic organizational deposition that they evidently never intended to take.**

The scheduling order provided that "all discovery . . . must be completed by September 15, 2023. . . . This Order contemplates that each party will conduct discovery in such a manner as to complete, within the deadline, any and all discovery." (R. 16 Sched. Order [ECF Doc. 25] at 2.) On August 16, 2023, Ms. Gephart served a notice of TD's deposition under Rule 30(b)(6), seeking examination on 53 topics on September 5, 2023. Mr. Daher wrote in the email serving the notice that "the close of fact discovery is fast approaching so please let me know asap if this date and time does not work for your client." On August 21, Mr. Melendez wrote that "Tuesday the 5th doesn't work for us, but the witness and I are both available on Tuesday the 12th." (Melendez Decl., ¶¶ 43–44, 47 at 12.) On August 23, TD served designations and objections in response to Ms. Gephart's notice, reiterating that TD's designated witness and attorney were unavailable on September 5, but available on September 12. (*Id.*, ¶ 49 at 13.)

Mr. Daher did not respond to TD's suggested date of September 12. Ms. Gephart's attorneys did not suggest that September 12 did not work, nor did they ask for or suggest any other date, so it was TD's understanding that the deposition would occur on September 12. (*Id.*, ¶ 48 at 12; *id.*, ¶ 57 at 14.) TD's attorney and its designated witness — Ms. Wolf, who had signed the October 2022 declaration — spent hours preparing. (*Id.*, ¶ 53 at 13; *id.*, ¶¶ 59–60 at 14; Wolf 3d Decl. [Melendez Decl., Ex. U], ¶ 14 at 2–3.) Ms. Wolf spent about 24 hours preparing, including practically the entire weekend of September 8–9. (Wolf 3d Decl., ¶ 14(d)–(g) at 3.) But on September 12, Mr. Daher

10

refused to proceed, claimed falsely that TD had "unilaterally canceled" the deposition, threatened a motion for an order compelling discovery, and asked to extend the discovery deadline. (Melendez Decl., ¶¶ 61–67 at 14–15.)

TD would not stipulate to an extension and, on September 18, the first business day after discovery ended, filed its motion for summary judgment (ECF Doc. 28).

### F. Even as Ms. Gephart and her attorneys conceded TD's summary-judgment motion, they improperly sought to preclude TD from seeking fees.

Once TD filed its summary-judgment motion, Ms. Gephart's attorneys were suddenly eager to dump this case — but only if they could preclude TD from seeking fees. Three days after TD filed its motion, Ms. Gephart proposed a mutual walk-away — that is, a dismissal with prejudice, in exchange for TD waiving any claim for costs or fees. TD would not agree. Having been unable to negotiate that settlement with TD, Ms. Gephart asked that the Court impose the settlement, in spite of TD's unwillingness to accept it. (*See* Motion to Dismiss Case [ECF Doc. 34].) The role that Ms. Gephart was asking that the Court play was not a proper role for a court: a court hears and decides cases and controversies, and cannot force a party into a settlement against its wishes. (*See* TD's Mem. Opp'n Pl.'s Conditional Motion Dismissal [ECF Doc. 35] at 2–5.)

When TD opposed Ms. Gephart's motion for conditional dismissal, her attorneys filed a stipulation for dismissal with prejudice in a form to which TD had agreed (ECF Doc. 36) — but they also filed a proposed order (ECF Doc. 36-1), which TD's attorneys had never seen, that would deprive TD of its rights under statute and under the rules. TD immediately objected (ECF Doc. 37), and the Court denied the stipulation (ECF Doc. 38).

II. **TD is entitled to fees under Rule 37(c)(2) for Ms. Gephart's failures without good reason to admit matters requested under Rule 36.**

TD served a request for 24 admissions, directed to every material factual and legal issue in this action. (*See* Resps. Req. Admiss., *in* Pl.'s Resps. & Objec'ns TD's Written Discovery [Melendez Decl., Ex. J] at 15–18.) As Rule 36 allows, the requests related to "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A)–(B) (scope).

When TD served its request for admissions, TD also served its initial disclosure and produced 62 pages of documents — including complete account records — that supported most matters of which it requested an admission. (Melendez Decl., ¶ 32 at 9.) Yet Ms. Gephart admitted only the first two matters in TD's request, both relating to the account being opened. (*Id.*, ¶ 40 at 11.) Ms. Gephart denied many matters outright, but responded to others by answering that "Plaintiff has made a reasonable inquiry and the information known or obtainable is insufficient to enable her to admit or deny Defendant's request." (*See* Resp. to RFA [Melendez Decl., Ex. M] Nos. 3–24 at 15–18.)

Ms. Gephart's and her attorneys' scorched-earth approach to the request for admissions is not necessarily illegitimate. Denying a request for admission, even where the answering party has admissible evidence that the requests are true, and lacks any evidence to the contrary, is a calculated strategy. But there are consequences when a calculated strategy goes wrong, and Ms. Gephart's strategy failed, after TD bore the expense of proving up through discovery and in a summary-judgment motion the matters of which it had requested admissions — an expense that could have been avoided if she had simply admitted facts that she and her attorneys had every reason to know were true.

12

TD's requests have not been "held objectionable"; indeed, Ms. Gephart herself did not object to any request. The requests sought admissions "of . . . substantial importance," since they would have established TD's defense without forcing it to seek a summary judgment. Ms. Gephart did not have any "reasonable ground to believe that [she] might prevail on" any matter of which TD requested an admission: she could not produce any shred of evidence to the contrary. (Melendez Decl., ¶ 38 at 10; *see* TD's Mem. Pts. & Authorities Supp. Motion Summ. J. [ECF Doc. 30] at 13:12 – 14:24 ("Ms. Gephart has no evidence that rebuts TD's and Trans Union's testimony.")). There was no "other good reason for the failure to admit." This Court must therefore order "that the party who failed to admit pay the reasonable expenses, including attorney's fees," in proving up the matters of which an admission was requested. Fed. R. Civ. P. 37(c)(2). Because TD's requests were directed to every material factual and legal issue in this action, the expenses that TD incurred in prevailing consist of its entire defense in this action.

III. **The TD Defendants are entitled to fees under 28 U.S.C. § 1927 because Ms. Gephart's attorneys multiplied these proceedings unreasonably and vexatiously.**

Rule 37(c)(2)'s fee-shifting provision shifts fees only onto the *party* acting in bad faith, not the party's attorney. Fed. R. Civ. P. 37(c)(2). But Ms. Gephart's attorneys bear much more responsibility for drawing out this litigation than Ms. Gephart herself does, and the burden of making TD whole should fall on them at least as much as on her. The provisions of 28 U.S.C. § 1927 provide a mechanism for letting the attorneys share their client's burden.

While there was bad faith here, such a finding is not necessary for an award of fees

13

under 28 U.S.C. § 1927: an attorney's conduct can be both "unreasonable" and "vexatious" within the statute's meaning if the conduct displays "recklessness" or "improper motive," with or without bad faith. *See Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir.2001) ("recklessness suffices for § 1927"); *Coghlan v. Starkey*, 852 F.2d 806, 814 (5th Cir. 1988) ("subjective bad faith is not necessary; attorneys have been held accountable for decisions that reflect a reckless indifference to the merits of a claim" (quoting *Reliance Ins. Co. v. Sweeney Corp.*, 792 F.2d 1137, 1139 (D.C. Cir. 1986))). Section 1927 "imposes a continuing obligation on attorneys by prohibiting the persistent prosecution of a meritless claim." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 975 (5th Cir. 1988). An improper motive can include "deliberately ke[eping] [a] meritless case alive for no purpose other than to force [the defendant] to settle or to defend it." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998).

     Ms. Gephart and her attorneys may not have known when they filed this lawsuit that TD Bank, N.A., was the wrong Defendant, or that TD never received notice with regard to the Trans Union dispute. But they knew both things by October 21, 2022, when they received Ms. Wolf's declaration. Their maintenance of this action from that day to this has been in bad faith — prosecuting the wrong Defendant for another three months, and lying to the Court in order to cover it up; then prosecuting TD for another six months, knowing that they lacked a viable claim. This litigation should have ended over a year ago: "When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Avrigan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991). TD was dragged through months of discovery, and

pushed to filing a motion for summary judgment, in order to escape this unreasonable and vexatious litigation.

Ms. Gephart's attorneys' failure to investigate by not seeking any discovery from Trans Union, (Melendez Decl., ¶ 36 at 10), also supports TD's claim for fees. *See Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) ("If a lawyer pursues a path that a reasonably careful attorney would have known, *after appropriate inquiry*, to be unsound, the conduct is objectively unreasonable and vexatious." (emphasis added)); *Fifth Third Bank v. Boswell*, 125 F.R.D. 460, 463 (S.D. Ohio 1989) (awarding sanctions after "more than a substantial amount of time for discovery to fully proceed and for counsel to make a thorough and responsible inquiry").

An attorney has a "professional duty to dismiss a baseless law suit, even over the objections of his client, and to do it promptly when he learned that his client had no case." *Pascual v. Wells Fargo Bank, N.A.*, No. 4:13-cv-02005-KAW, 2014 U.S. Dist. LEXIS 18592, at *20 (N.D. Cal. Feb. 13, 2014); *see also Danielson-Holland v. Standley & Assocs., LLC*, 512 F. App'x 850, 853 (10th Cir. 2013) ("An attorney must 'regularly re-evaluate the merits' of claims and 'avoid prolonging meritless claims.'"). Ms. Gephart's attorneys pushed this case too far, at TD's expense. Their failure to discontinue their quest multiplied the proceedings unreasonably and vexatiously. This Court should therefore award fees under 28 U.S.C. § 1927. The "costs, expenses, and attorneys' fees reasonably incurred because of such conduct" consist of the TD Defendants' entire defense in this action since October 21, 2023.

**Reasonableness of Requested Award**

The legal work on TD's defense in this matter was performed primarily by Brian Melendez of Barnes & Thornburg LLP and Jefferson T. Collins of Jones, Skelton & Hochuli, P.L.C.

Mr. Melendez was admitted to practice in 1991. (Melendez Decl., ¶ 1 at 1.) He is a former president of the Minnesota State Bar Association, and has significant experience in consumer-credit litigation. (*See id.*, Ex. V.) His current hourly rate is $670; his hourly rate in this matter has been $557.60, resulting from a discount pursuant to Barnes's fee agreement with TD and Target. (*Id.*, ¶ 68 at 15.) Other courts have held that his hourly rates in consumer-protection cases were reasonable. (*Id.*, ¶¶ 71–72 at 16.) Mr. Melendez has submitted a declaration documenting his fees in this matter. (*Id.*, ¶¶ 69–70 at 15–16 & Ex. W.)

Mr. Collins was admitted to practice in 1995. (Collins Decl., ¶ 1 at 1.) He is a veteran litigator with extensive experience. (*See id.*, Ex. A.) His current hourly rate is $195. Mr. Collins has submitted a declaration documenting his fees in this matter and attaching his firm's invoices. (Collins Decl., ¶¶ 4–5 at 2 & Ex. B.)

The expenses that the TD Defendants will have incurred in defending this matter after October 21, 2022, are $63,441.58 for Mr. Melendez's firm, and $4,419.50 for Mr. Collins's firm, for a total of $67,861.08.

**Conclusion**

This whole litigation has been a shakedown. TD has repeatedly demonstrated a complete defense to Ms. Gephart's claims. TD has repeatedly asked that Ms. Gephart

16

dismiss those claims — in October 2022 (Melendez Decl., ¶ 8 at 3), in March 2023 (*id.*, ¶ 29 at 9), and in August 2023 (*id.*, ¶ 45 at 12). And Ms. Gephart's attorneys repeatedly responded that, for the claims to go away, they would need to be paid. (*See id.*, ¶ 7 at 3; *id.*, ¶ 28 at 8; *id.*, ¶ 46 at 12.)

Ms. Gephart and her attorneys knowingly pursued the wrong Defendant for months, despite the TD Defendants' repeated efforts to correct the misnomer — then they lied to the Court about it. They substituted TD in as the Defendant, even though they knew that TD had a complete defense and that her claims were not viable. They wasted the two-month discovery stay. They still refused to dismiss their claims even after Trans Union's testimony corroborated TD's. They forced TD and its designated witness to prepare for a 53-topic organizational deposition that they evidently never intended to take. And even as they conceded TD's summary-judgment motion, they improperly sought to preclude TD from seeking fees.

TD is entitled to fees under Rule 37(c)(2) for Ms. Gephart's failures without good reason to admit matters requested under Rule 36. The TD Defendants are entitled to fees under 28 U.S.C. § 1927 because Ms. Gephart's attorneys multiplied these proceedings unreasonably and vexatiously.

Therefore, the TD Defendants respectfully ask that this Court award fees of $67,861.08 to them jointly from Ms. Gephart under Rule 37(c)(2) and from her attorneys under 28 U.S.C. § 1927.

November 2, 2023.

BARNES & THORNBURG LLP

/s/ Brian Melendez

_____

Brian Melendez
Attorney for Defendant
   TD Bank USA, N.A.