Jefferson T. Collins,
　　Bar No. 016428
JONES, SKELTON & HOCHULI, P.L.C.
Suite 2700
40 North Central Avenue
Phoenix, AZ 85004
Fax 602.200.7825
Ph. 602.263.1700
jcollins@jshfirm.com

Brian Melendez,
　　Minn. License No. 0223633
　　(admitted pro hac vice)
BARNES & THORNBURG LLP
Suite 2800
225 South Sixth Street
Minneapolis, MN 55402-4662
Ph. 612.367.8734
Fax 612.333.6798
brian.melendez@btlaw.com

Attorneys for Defendant
　　TD Bank USA, N.A.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Janelle M. Gephart, | No. 2:22-cv-01652-SMM |
|---|---|
| Plaintiff, | |
| v. | **DECLARATION OF BRIAN MELENDEZ IN SUPPORT OF TD DEFENDANTS' MOTION FOR FEES** |
| TD Bank USA, N.A.; et al., | |
| Defendants. | |

State of Minnesota,　　　　　　　)
　　　　　　　　　　　　　　　　) SS.
County of Hennepin　　　　　　　)

　　　Pursuant to 28 U.S.C. § 1746, the undersigned Brian Melendez declares:

1. My name is Brian Melendez. I am an attorney representing Defendant TD Bank USA, N.A., in this action; I also represent former Defendant TD Bank, N.A. My attorney license number before the Supreme Court of Minnesota is 0223633, and I have been admitted to practice since 1991. I am admitted pro hac vice. I make this declaration in support of the TD Defendants' motion for fees.

2. For this declaration's purposes—

    (a) "TD" means Defendant TD Bank USA, N.A., but does not include former Defendant TD Bank, N.A.;

    (b) the "TD Defendants" mean TD and former Defendant TD Bank, N.A.; and

    (c) "Target" means TD's credit-card servicer Target Enterprise Services, Inc. (formerly known as Target Enterprise, Inc.).

3. This action was filed on September 28, 2022, naming TD Bank, N.A., and TransUnion, LLC, as the Defendants. (ECF Doc. 1.)

4. On September 28, 2022, the TD Defendants learned about this action from outside counsel.

5. On September 29, 2022, TD and Target engaged me for their defense in this action.

6. On September 30, 2022, I wrote to Ms. Gephart's attorney Alexander Taylor:

    > Dear Mr. Taylor:
    >     I represent Defendant TD Bank, N.A., and its affiliate TD Bank USA, N.A., in this matter. I am working on lining up Arizona counsel. I am writing (1) to ask whether you are interested in amending the complaint so that it names the correct Defendant, and (2) to offer to waive service.
    >     First, the complaint names "TD Bank, N.A." as the Defendant, but refers to "a Target department store credit card serviced by TD Bank" (¶ 7). TD Bank USA, N.A., not TD Bank, N.A., issues the Target-branded credit card, and is the only TD entity involved with Target credit cards. TD Bank, N.A., is a separate TD affiliate that is not involved with Target credit cards. We are willing to consent to an amendment that corrects the misnomer. Please let me know whether you are willing to amend the complaint, or if we should plan to respond to the complaint in its current form.

    This declaration attaches that email as part of Exhibit A, on the exhibit's fifth and final page.

7. On October 3, 2023, I received a response to my September 30, 2022 email from Ms. Gephart's attorney Marwan Daher, who wrote:

> I hope all is well. Unfortunately, service is in the process of being served by our process server so waiver is no longer an option. We will note this for future cases, if any. As for the amendment, we can correct this. However, I think[]it would behoove us to at least attempt to resolve this prior to your answer date as to avoid costly and protracted litigation. Accordingly, I have authority to make the following demand:
> [Settlement Demand Redacted]
> I can keep this offer open up until your answer date. Please advise as to your client's response. Thanks in advance.

This declaration attaches that email as part of Exhibit A at pages 2–3.

8. On October 21, 2022, I wrote back to Mr. Daher, Mr. Alexander, and their partner Mohammed Badwan:

> As far as we know, TD Bank, N.A. — the named Defendant — still hasn't been served with process. I remain willing to return a waiver of service. If you have served TD, will you please let me know when service was made?
> Meanwhile, TD Bank USA, N.A. — the correct Defendant — has completed its investigation of Ms. Gephart's claim, which concerns a Trans Union dispute in February–March 2022. TD never received notice of that dispute. I attach a declaration to that effect. Since notice of the dispute is a prerequisite to liability, we ask that Ms. Gephart dismiss her claim.
> TD agrees that Ms. Gephart's debt was discharged in her bankruptcy and that she owes nothing on her Target credit card, and has been reporting her account accordingly. If a consumer reporting agency is reporting the account differently, then the inaccurate information is not coming from TD, but TD is willing to help clean it up. I attach the credit reporting that TD pulled earlier this month: TD's tradeline isn't appearing on the Trans Union or Experian report, and is reporting correctly on the Equifax report. If you see something that needs to be changed, then please let me know.

This declaration attaches that email as part of Exhibit A at page 2.

9. My October 21, 2022 email attached the Declaration of Susan L. Wolf (Oct. 20, 2022), which confirmed that TD never received notice of Ms. Gephart's credit-reporting dispute through Trans Union in February–March 2022. (Wolf Decl., ¶¶ 6–7 at 2.) This declaration attaches Ms. Wolf's declaration, in the form in which it was attached to my October 21, 2022 email (with highlighting added), as Exhibit B.

10. On October 21, 2022, Mr. Daher wrote back to me that "I will review and circle back with you. However, as a preliminary note, not receiving notice from Transunion does not fully absolve your client as disputes were sent to Equifax and Experian as well, they're just not a named party to this action." This declaration attaches that email as part of Exhibit A at page 1.

11. On November 4, 2022, the summons and complaint were served on TD Bank, N.A. (*See* ECF Doc. 5.)

12. On November 28, 2022, since Ms. Gephart's attorneys had taken no action to amend their complaint in order to correct the misnomer, TD Bank, N.A., served an answer. (ECF Doc. 7.) That answer pleaded that Ms. Gephart had sued the wrong Party:

### First Additional Defense
### Wrong Party

78. The complaint names "TD Bank, N.A." as the Defendant.

79. Ms. Gephart's claim against TD involves a Target-branded credit card.

80. TD Bank USA, N.A., issues the Target RedCard credit card, and is the only TD entity involved with Target credit cards.

81. Ms. Gephart had a Target credit-card account with TD Bank USA, N.A., not with TD Bank, N.A.

82. TD Bank, N.A., is a separate entity in its own right, and is not an alter ego of TD Bank USA, N.A.

83. TD Bank, N.A., was not involved in the activity that the complaint alleges.

84. TD Bank, N.A., did not furnish any information about Ms. Gephart to Experian, to Trans Union, or to any other consumer reporting agency.

85. As between the named Defendant TD Bank, N.A., and TD Bank USA, N.A., the only real Party in interest is TD Bank USA, N.A.

86. TD Bank USA, N.A., does not dispute the facts in this defense.

13. On December 12, 2023, the Court ordered the Parties to develop a proposed case-management plan and to file it in advance of a preliminary pretrial conference scheduled for January 20, 2023. (Order Setting R. 16 Preliminary Pretrial Conf. [ECF Doc. 8] at 3–5.)

14. On January 16, 2023, in the context of developing the proposed case-management plan, I wrote to Ms. Gephart's attorneys that "I'd still like to have the call to discuss whether Ms. Gephart will continue to pursue TD Bank, N.A., rather than TD Bank USA, N.A." This declaration attaches that email as part of Exhibit C at page 1.

15. On January 16, 2023, the Parties' attorneys held a case-management conference in which (among other things) they discussed amending the complaint to drop TD Bank, N.A., and add TD Bank USA, N.A. Ms. Gephart's attorneys indicated during the call that they would file an amended complaint on Monday, January 16, or Tuesday, January 17.

16. On January 16, 2023, the Parties filed the proposed Case Management Plan (ECF Doc. 11), which included this statement on TD Bank, N.A.'s behalf:

> **Defendant TD Bank, N.A.** The complaint names "TD Bank, N.A." as the Defendant, and TD Bank, N.A., was summoned and served. Ms. Gephart's claim against TD involves a Target-branded credit card. TD Bank USA, N.A., issues the Target RedCard credit card, and is the only TD entity involved with Target credit cards. Ms. Gephart had a Target credit-card account with TD Bank USA, N.A., not with TD Bank, N.A. TD Bank, N.A., is a separate entity in its own right, and is not an alter ego of TD Bank USA, N.A. TD Bank, N.A., was not involved in the activity that the complaint alleges. TD Bank, N.A., did not furnish any information about Ms. Gephart to Trans Union or to any other consumer reporting agency. As between the named Defendant TD Bank, N.A., and TD Bank USA, N.A., the only real Party in interest is TD Bank USA, N.A. TD Bank USA, N.A., does not dispute the facts in this defense.
>
> With respect to Ms. Gephart's credit-card account, neither TD Bank, N.A., not TD Bank USA, N.A., has ever received any notice from Trans Union (a) with regard to the dispute alleged in her complaint at paragraphs 18–23 and 37–47, or (b) with regard to any other dispute about the completeness or accuracy of information provided to Trans Union regarding the subject account.

(ECF Doc. 11 at 2:8–18.)

17. On Wednesday, January 18, 2023, I wrote to Ms. Gephart's attorneys,

> I'm following up on our conversation during the case-management conference on Monday about amending the complaint to drop TD Bank, N.A., and add TD Bank USA, N.A. You indicated during the call that you would file an amended complaint on Monday or Tuesday. I attach another copy of the declaration explaining the relationship (see ¶¶ 11–14).

This declaration attaches that email as part of Exhibit D at page 1.

18. Ms. Gephart's attorneys did not respond to my January 18, 2023 email, and did not file an amended complaint.

19. On January 20, 2023, the Court held a telephonic Rule 16 preliminary pretrial conference. This declaration attaches a transcript of those proceedings as Exhibit E.

5

20. During the Rule 16 preliminary pretrial conference, I raised with the Court the issue of the wrong party being named, and referred to the declaration that I had sent to Ms. Gephart's attorneys on October 21, 2022:

> The party that is named, TD Bank NA, is not a proper party, and we provided a declaration to Ms. Gephart's attorneys asking them to name the correct party, and we have offered to waive service. And you know, it should be TD Bank U.S.A. that gets named. They were the issuer of the credit card.

(Tr. [Ex. E] at 6:5 – 7:5.)

21. When the Court asked Ms. Gephart's attorney Alexander Taylor about correcting the error, Mr. Taylor — to whom I had written about the misnomer in September 2022 (*see supra* ¶ 6), to whom I had sent Ms. Wolf's declaration in October 2022 (*see supra* ¶¶ 8–9), who had been served with TD Bank, N.A.'s answer in November 2022 (*see supra* ¶ 12), to whom I had again sent Ms. Wolf's declaration a week earlier (*see supra* ¶ 17), and who had filed the Parties' proposed case-management plan a week earlier (*see supra* ¶ 16) — claimed that he had learned about naming the wrong Defendant only two days before:

```
            THE COURT:  Mr. Taylor, what steps have you taken to
    correct this?
            MR. TAYLOR:  Your Honor, I think we found out about
    this Wednesday.  Correct me if I have the date --
            MR. MELENDEZ:  No, absolutely not.
    ....
            MR. TAYLOR:  Your Honor, this is Alexander Taylor.  I
    apologize if I misdated -- misstated Mr. Melendez.  At earliest
    we found out about this this Monday.  The declaration was
    provided to us at least on my record Wednesday, which would be
    two days ago.
```

(Tr. [Ex. E] at 7:6 – 8:2.)

22. When the Court pushed Mr. Taylor about why he had waited so long to correct the misnomer, Mr. Taylor blamed his colleague Mr. Daher, even though it was Mr. Taylor to whom I had first written in September 2022 and Mr. Taylor had been in the "To" line of every email on the subject:

6

> THE COURT: Well, Mr. Taylor, I think Mr. Melendez said that he sent one of these documents sometime ago with the requisite affirmations that you had the wrong party and there was a document involved.
>
> MR. TAYLOR: He may have been contacting Mr. Daher on this, who is my colleague. I am not sure why this hasn't been corrected. I know we committed to correcting the record, and we are going to correct it, and we will correct it ASAP.
>
> THE COURT: Well, here's my point, and this is something I do quite a bit, where the parties involved select one lawyer and that lawyer speaks for them with regard to stipulations and documents and things like that, because if I had to have an evidentiary hearing and if it turns out that in fact they had sent this to you some months ago to your colleague and your colleague didn't report it to you or put it in your files or do something with it and get it underway, your firm would have been in big trouble.

(Tr. [Ex. E] at 10:8–24.)

23. The Court ordered the Parties to "stipulate in a written document among yourselves that you — and I will sign the order when it comes in — that you substitute TD Bank U.S.A. as the real party in interest and TD Bank is dismissed, and TD Bank U.S.A. waives service of process . . . ." (Tr. [Ex. E] at 8:13–18.)

24. Mr. Taylor promised the Court that "[w]e can have a stipulation within seven days. We will have a stipulation to correct the parties. My apologies if we missed it, but we can stipulate to correct the parties within seven days. No issues." (Tr. [Ex. E] at 9:21–24.)

25. The Court at the Rule 16 conference also stayed discovery so that the Parties could discuss settlement and, in response to TD's defense that it had received no notice of the subject dispute, suggested that

7

> I am not saying your client [TD] should pay any money necessarily, but maybe the Plaintiffs might be in a position to say: Okay. If we settle with TransUnion hypothetically, and I get a favorable result there, I am willing to dismiss your client if in fact you can show me you didn't receive a notice, or whatever it is.

(Tr. [Ex. E] at 14:18–23.)

26. On January 20, 2023, following the Rule 16 conference, the Court entered an order:

> ORDER staying formal discovery until March 24, 2023. If the parties are unable to come to a settlement by that date, the Court will issue a scheduling order, setting out formal discovery deadlines. IT IS FURTHER ORDERED that the parties must file a stipulation on the addition of TD Bank USA and the dismissal of TD Bank NA by January 30, 2023.

(ECF Doc. 16.)

27. On February 8, 2023, the Court granted the Parties' stipulation dropping TD Bank, N.A., and substituting TD as a Defendant. (ECF Doc. 22.)

28. Ms. Gephart had never made a demand on TD — only the October 3, 2022 demand on TD Bank, N.A., before TD was a Party. That October 2022 demand had been rejected on October 21, 2022, when TD responded to the demand by asking that Ms. Gephart dismiss her claim. But on March 6, 2023, Mr. Daher wrote to me,

> . . . . . As you know, at the Rule 16 preliminary conference, Judge McNamee ordered the parties to attempt to resolve this case after the parties indicated that they would attempt to settle. However, we have not heard back from you in regards to Plaintiff's demand here, which is controverted by the Judge's orders.
> It seems like your client will be the last remaining Defendant here in just a couple of days so please advise if your client has a counter to Plaintiff's demand.

This declaration attaches that email as part of Exhibit F at page 3.

29. On March 6, 2023, I wrote back to Mr. Daher:

> You attached a copy of your demand on 3 October. I attach a copy of my response on 21 October, pointing out that there is no basis for liability on TD's part, and attaching a declaration and documents supporting TD's view. TD is not willing to pay Ms. Gephart when it has been reporting her account correctly all along.

8

> I raised that issue during the pretrial conference, when I said to Judge McNamee that "a prerequisite for liability under the Fair Credit Reporting Act is my client would have needed to receive a Notice of Dispute from the Consumer Reporting Agency, and we never got that notice so we don't think there is any liability here." Judge McNamee responded by suggesting that "maybe the Plaintiffs might be in a position to say: Okay. If we settle with TransUnion hypothetically, and I get a favorable result there, I am willing to dismiss your client [TD] if in fact you can show me you didn't receive a notice, or whatever it is." As I indicated on the record, TD is on board with that approach. If Ms. Gephart will dismiss her claim against TD with prejudice, then TD will waive any claim for costs or fees.

This declaration attaches that email as part of Exhibit F at page 2.

30. On March 6, 2023, Mr. Daher wrote back to me:

> . . . . Transunion has neither admitted or denied it sent notice to TD Bank by way of either an ACDV or DRN notification. Since your client did not file a motion to dismiss for that reason (because notice was adequately pled), we will have to wait until after discovery and depositions to ascertain whether Defendant received notice. As for your indication that fees and costs might be an option for your client, we vehemently disagree. We have been down this road many times before (in fact, we have won many Motions on this issue all around the country). There is no way that Plaintiff can prove without discovery that Defendant did not receive notice of disputes prior to adequate discovery on the issue. There is a plethora of case law on this. Accordingly, we will not be dismissing this case.

This declaration attaches that email as part of Exhibit F at page 1.

31. On March 28–29, 2023, TD served interrogatories, a request for production, and requests for admission upon Ms. Gephart.

32. On March 28, 2023, with its discovery requests, TD also served its initial disclosure and produced 62 pages of documents — including complete account records — that supported most matters of which it requested an admission. This declaration attaches TD's initial disclosure as Exhibit G, and the email transmitting the account records as Exhibit H.

33. On March 29, 2023, Ms. Gephart served interrogatories, a request for production, and requests for admission upon TD.

34. On March 30, 2023, TD served interrogatories and a request for production upon Trans Union. This declaration attaches those discovery requests as Exhibits I–J.

9

35. On April 11, 2023, Ms. Gephart's attorneys downloaded the account records that TD produced with its initial disclosure. This declaration attaches the download notification as Exhibit K.

36. Despite Mr. Daher's statement in his March 6, 2023 email that "[t]here is no way that Plaintiff can prove without discovery that Defendant did not receive notice of disputes," Ms. Gephart and her attorneys never served any discovery on Trans Union.

37. TD's answers to Ms. Gephart's interrogatories establish that neither TD nor Target ever received any notice from Trans Union with regard to the February–March 2022 dispute alleged in the complaint. (Answers Pl.'s Interrogs. [Ex. L], Answer No. 2(b)–(c) at 4–5; *id.*, Answer Nos. 10–12 at 10–12; *id.*, Answer Nos. 14–17 at 11–13; *id.*, Answer No. 21 at 14.) This declaration attaches TD's interrogatory answers as Exhibit L.

38. When asked in discovery for evidence that TD received notice of her dispute from Trans Union, Ms. Gephart's interrogatory answer points only to the fact that she mailed the dispute to Trans Union, again relying only "[u]pon information and belief" for her assumption that Trans Union forwarded notice of her dispute to TD:

> **INTERROGATORY NO. 3:** What evidence do you have that contradicts, impeaches, or otherwise undermines TD's defense that neither TD nor Target has ever received any notice from Trans Union with regard to the dispute alleged in your complaint?
>
> **RESPONSE:** Plaintiff refers Defendant to GEPHART000001-000077. Specifically, Plaintiff provides copies of her written disputes issued to TransUnion with tracking details from the USPS. Upon information and belief, TD Bank received notice of Plaintiff's dispute letter and all enclosed supporting documents from TransUnion within five days of TransUnion receiving Plaintiff's dispute letter. *See* 15 U.S. Code §1681i(a)(2).

(Pl.'s Resps. & Objec'ns TD's Written Disc. [Ex. M], Resp. to Interrog. No. 3 at 4.) This declaration attaches Ms. Gephart's discovery responses as Exhibit M.

39. Ms. Gephart's interrogatory answers also establish that she had received Ms. Wolf's declaration, which I had provided to her attorneys in October 2022 and again in February 2023:

> **INTERROGATORY NO. 1:** Did you receive the Declaration of Susan L. Wolf (Oct. 20, 2022) that was served with these interrogatories?
>
> **RESPONSE:** Plaintiff states that she received the Declaration of Susan L. Wolf (Oct. 20, 2022) that was served with these interrogatories.

(Pl.'s Resps. & Objec'ns TD's Written Disc. [Ex. M], Resp. to Interrog. No. 1 at 4.)

10

40. Ms. Gephart admitted only the first two matters in TD's request for admissions, admitting that "[o]n September 9, 2013, you applied to TD for a Target-branded credit card" and that "[y]our September 2013 application resulted in a credit-card account being issued, with an account number ending in -4785 and an account-identification number ending in -7834." (Pl.'s Resps. & Objec'ns TD's Written Disc. [Ex. M], Resp. to RFA Nos. 1–2 at 15.) This declaration attaches Ms. Gephart's answers to TD's request for admissions as part of Exhibit M, starting at the exhibit's page 15.

41. To further establish its defense that neither TD nor Target ever received any notice from Trans Union with regard to the February–March 2022 dispute alleged in the complaint, TD sought discovery from Trans Union after Trans Union was dismissed as a Defendant, in the form of a subpoena seeking an organizational deposition under Rule 30(b)(6). This declaration attaches TD's subpoena and notice of deposition to Trans Union as Exhibits N–O.

42. TD's discovery seeking information from Trans Union resulted in a declaration from Trans Union's employee Donald Wagner, who testified:

    a. On March 25, 2022, Trans Union received dispute correspondence from Plaintiff, dated February 25, 2022, regarding the Account. Trans Union did not send an Automated Credit Dispute Verification ("ACDV") to TD Bank in connection with Plaintiff's dispute.

    b. On July 19, 2022, Trans Union received second dispute correspondence from Plaintiff, dated July 12, 2022, regarding the Account. Trans Union deleted the Account and did not send an ACDV to TD Bank in connection with Plaintiff's second dispute.

    c. To date, Trans Union has only informed Plaintiff or Plaintiff's counsel that an ACDV was not sent to TD Bank in connection with Plaintiff's March 25, 2022, and July 19, 2022, disputes in its Objections and Answers to TD Bank's First Set of Interrogatories to Trans Union.

    d. Trans Union has not provided any information to Plaintiff's counsel contrary to the information in this declaration.

This declaration attaches Mr. Wagner's declaration as Exhibit P.

43. On August 16, 2023, Ms. Gephart served a notice of TD's deposition under Rule 30(b)(6), seeking examination on 53 topics on September 5, 2023. This declaration attaches that notice as Exhibit Q.

44. On August 16, 2023, Mr. Daher wrote in the email serving the notice of deposition that "the close of fact discovery is fast approaching so please let me know asap if this date and time does not work for your client." This declaration attaches that email as part of Exhibit R at page 16.

45. On August 17, 2023, I forwarded Mr. Wagner's declaration to Mr. Daher and Mr. Taylor, writing that "I attach a declaration from Trans Union confirming that TU never sent notice to TD about Ms. Gephart's dispute. Since lack of such notice is a complete defense to Ms. Gephart's claim against TD, I renew my request that she dismiss that claim." This declaration attaches that email as part of Exhibit R at page 15.

46. On August 17, 2023, Mr. Daher wrote back to me:

> . . . . Per Transunion's policy, which is also e-Oscar's policy, if an account is changed in response to a consumer dispute, the furnisher automatically receives what's called a Dispute Response Notification from the credit reporting agency. A DR Notification is a notice that an account has been modified or deleted due to a dispute response, a non-response to a dispute (by the response due date) or as a result of a Consumer Reporting Agency's internal reinvestigation (as specified in Section 611(a)(5)(A)(ii) of the FCRA). Images included with a Notification shall be considered a part of such Notification.
>
> Unfortunately, the affidavit you provided did not mention this DR Notification only an ACDV. Even more, your client was put on notice by Equifax, which in turn provides notice to all other CRAs and your client. Please provide a date for your client's deposition as soon as possible. My client is also willing to negotiate a reasonable settlement.

This declaration attaches that email as part of Exhibit R at page 14.

47. On August 21, 2023, I wrote to Mr. Daher about TD's organizational deposition that "Tuesday the 5th doesn't work for us, but the witness and I are both available on Tuesday the 12th. I'll follow up later this week about the deposition's scope." This declaration attaches that email as part of Exhibit R at page 13.

48. Mr. Daher did not respond to my suggested date of Tuesday, September 12, 2023, for the deposition. Ms. Gephart's attorneys did not suggest that September 12 did not work, and they did not ask for or suggest any other date, so it was my understanding that the deposition would therefore occur on September 12, 2023.

49. On August 23, 2023, I served Defendant TD Bank USA, N.A.'s Designations and Objections in Response to Notice of Organizational Deposition (Aug. 23, 2023) by means of an email to Mr. Daher and Mr. Taylor. The designations and objections restated that "[t]he notice seeks a deposition on September 5, 2023, at 10:30 a.m. Central time. That date and time are not convenient for TD's designated witness and attorney, but they are both available on Tuesday, September 12, 2023." This declaration attaches the designations and objections as Exhibit S.

50. I wrote in the email serving the designations and objections, and summarizing the objections, that "I am writing to set out TD's objections in more detail, in order to comply with Rule 30(b)(6)'s requirement that 'the serving party and the organization must confer in good faith about the matters for examination.'" This declaration attaches that email as part of Exhibit R at pages 9–12.

51. On August 23, 2003, Mr. Daher wrote back in response to my email serving the designations and objections that "I will review the objections and circle back with you by tomorrow or Monday."

52. Mr. Daher did not follow up with me about the matters for examination or about TD's objections.

53. On August 31, 2023, I met for 1.3 hours with TD's designated witness Susan L. Wolf and my colleague Autumn C. Gear in preparation for Ms. Wolf's testimony as TD's designated witness. That preparation included reviewing the 53 matters for examination, the complaint, TD's answer, Ms. Wolf's prior declarations, TD's discovery responses, and the documents that TD produced. I had prepared for Ms. Wolf a 13-tab binder with the materials.

54. On Friday, September 1, 2023, the Friday before Labor Day, Mr. Daher wrote to me that "[s]ince we have not discussed the topics yet, we will not be proceeding with TD Bank's deposition on Tuesday, September 5, 2023. Please provide alternative dates and let[']s shoot to get on a call on Tuesday or Wednesday next week to discuss and narrow the topics. Please confirm." This declaration attaches that email as part of Exhibit R at page 8.

55. On Tuesday, September 5, 2023, the day after Labor Day, I wrote back to Mr. Daher, "As we indicated in TD's designations and objections, today would not have been convenient for TD's designated witness and me, but we are both available on Tuesday the 12th." This declaration attaches that email as part of Exhibit R at pages 7–8.

56. On September 5, 2023, TD served amended answers to Ms. Gephart's interrogatories. Those amended answers reiterated TD's defense that neither TD nor Target ever received any notice from Trans Union with regard to the February–March 2022 dispute alleged in the complaint. TD's Am. Answers Pl.'s Interrogs. [Ex. Q], Answer No. 2(b)–(c) at 4–5; *id.*, Answer Nos. 11–12 at 11; *id.*, Answer Nos. 14–15 at 12; *id.*, Answer No. 21 at 14.) This declaration attaches TD's amended interrogatory answers as Exhibit T.

57. Mr. Daher again did not respond to my suggested date of Tuesday, September 12, 2023, for the deposition. Ms. Gephart's attorneys did not suggest that September 12 did not work, and they did not ask for or suggest any other date, so it was my understanding and Ms. Wolf's understanding that the deposition would therefore occur on September 12, 2023.

58. Mr. Daher did not follow up with me about the matters for examination or about TD's objections.

59. On September 11, 2023, I met for 1 hour with Ms. Wolf in preparation for her testimony on the following day. That preparation included reviewing the 53 matters for examination.

60. On September 13, 2023, Ms. Wolf detailed her preparation for her testimony as TD's organizational witness in her declaration (ECF Doc. 32) in support of TD's motion for summary judgment, in paragraph 14 at pages 2–3. This declaration attaches another copy of Ms. Wolf's September 2023 declaration as Exhibit U.

61. On September 12, 2023, at 9:21 a.m., having heard nothing from Mr. Daher since before Labor Day — and with Ms. Wolf sitting in my office awaiting the deposition — I wrote to Mr. Daher and to Mr. Taylor, "I haven't heard anything further from you about TD's deposition, nor have we met and conferred about the topics. Will you be proceeding with the deposition today?" This declaration attaches that email as part of Exhibit R at page 7.

62. On September 12, 2023, at 9:28 a.m., Mr. Daher wrote back to me, "Are you available today to discuss this case as a whole? We suggest both parties extend the discovery deadline by 30 days so we may both conduct depositions." This declaration attaches that email as part of Exhibit R at page 6.

63. On September 12, 2023, at 9:29 a.m., I wrote back to Mr. Daher that "I had today cleared for the deposition, so I am available to discuss, including now. But we oppose any extension of the discovery deadline." This declaration attaches that email as part of Exhibit R at pages 5–6.

64. On September 12, 2023, at 9:40 a.m., Mr. Daher wrote back to me, "When did we agree on the 12th for your client's deposition? You unilaterally canceled last week's deposition and unilaterally provided the 12th date as convenient for you. I will call you shortly." This declaration attaches that email as part of Exhibit R at page 4.

65. I waited an hour, with Ms. Wolf in my office, for Mr. Daher to call. When he did not call, I wrote back to him at 10:30 a.m.,

> Your statement that I "unilaterally canceled last week's deposition" is false. I attach your email of the 1st in which you write that "we will not be proceeding with TD Bank's deposition on Tuesday, September 5, 2023."

14

Case 2:22-cv-01652-SMM   Document 42   Filed 11/02/23   Page 15 of 17

> I have let you know several times over the last three weeks — on 21 August, 23 August, and 5 September — that the witness and I were both available on Tuesday the 12th (today). You have never suggested that today didn't work for you, nor have you have suggested any other date.
> The witness has been sitting in my office since 10 a.m. Will you be proceeding with the deposition today? If not, then I am going to let her go home.

This declaration attaches that email as part of Exhibit R at pages 3–4.

66. On September 12, 2023, at 10:53 a.m., Mr. Daher wrote to me.

> Do you have a deposition notice from us dated for today? Better yet, did you ever receive any confirmation from us that we're proceeding today for the deposition? Did you receive Zoom login information from us?
> Not sure why she is sitting in your office considering we never sent you one. Seems like a ploy from TD Bank to avoid depositions.
> Is your client available Thursday or Friday this week for its deposition? If not, we will be forced to compel and seek an extension.

This declaration attaches that email as part of Exhibit R at page 3.

67. On September 12, 2023, at 10:54 a.m., I wrote to Mr. Daher that "[t]he witness is not available on Thursday or Friday. I am letting her go home." This declaration attaches that email as part of Exhibit R at pages 2–3.

68. My hourly rate is $670. My firm's fee agreement with TD's servicer Target provides for a discount, so my hourly rate in this matter has been $557.60.

69. The fees that appear in Exhibit W are a true and correct account of the fees that my firm has billed in this matter. The eighth column, "Discounted Amount," is the amount that the clients have paid or will pay after applying the discount described in paragraph 68 above.

70. The fees and costs that are the subject of the TD Defendants' motion for fees include:

   (a) the fees on Exhibit W from October 21, 2022, through October 31, 2023, which total $58,441.58;[1]

---

[1] The spreadsheet covers a period that begins on September 29, 2022. But the motion for fees seeks fees only for work performed after October 21, 2022, so the amount sought excludes fees for earlier work.

15

(b) the fees that TD will incur after October 31, 2023, including fees in connection with finalizing and filing the motion for fees and with a reply in support of the motion, which I estimate will be approximately $5,000,

for a total of $63,441.58.

71. Another federal court in this circuit held last year that my hourly rates in a consumer-protection case were reasonable: "Upon review of Defendants' billing records, this Court finds that the amount of time billed and counsels' hourly rates are reasonable. Accordingly, this Court awards fees in the amount of $41,598.81." Order (ECF Doc. 74), *Miler v. TD Bank USA, N.A.*, No. 3:20-cv-00340-IM (D. Or. July 12, 2022) (text order only). My hourly rate for that matter was $510. This declaration attaches that order as Exhibit X.

72. The federal court in my home state of Minnesota awarded my fees earlier this year in another Fair Credit Reporting Act case. Order (ECF Doc. 43), *Towle v. TD Bank USA, N.A.*, No. 0:22-cv-00624-PJS-TNL (D. Minn. Apr. 20, 2023). My hourly rate for that matter was $510. This declaration attaches that order as Exhibit Y.

73. A true and correct copy of each following document accompanies this declaration:

| Ex. | Document |
|---|---|
| A | Emails Between Brian Melendez, Alexander Taylor, and Marwan Daher (Sept. 30 – Oct. 21, 2022) (subject line "Gephart v. TD Bank, N.A., No. 2:22-cv-01652-SMM (D. Ariz.): Misnomer; service") |
| B | Declaration of Susan L. Wolf (Oct. 20, 2022) |
| C | Email from Brian Melendez to All Counsel (Jan. 16, 2023) |
| D | Email from Brian Melendez to All Counsel (Jan. 18, 2023) (subject line "Gephart v. TD Bank, N.A.: Amended complaint") |
| E | Reporter's Transcript of Proceedings: Telephonic Rule 16 Preliminary Pretrial Conference (Jan. 20, 2023) |
| F | Emails Between Marwan Daher and Brian Melendez (Mar. 6, 2023) |
| G | TD Bank USA, N.A.'s Initial Disclosure (Mar. 28, 2023) |
| H | Email from Brian Melendez to Alexander Taylor (Mar. 28, 2023) (subject line includes "TD's documents produced with initial disclosure") |
| I | Defendant TD Bank USA, N.A.'s Interrogatories to Trans Union (Mar. 30, 2023) |
| J | Defendant TD Bank USA, N.A.'s Request to Trans Union for Production (Mar. 30, 2023) |
| K | Download Notification (Apr. 11, 2023) |
| L | Defendant TD Bank USA, N.A.'s Answers to Plaintiff's Interrogatories (May 23, 2023) |

| | | |
|---|---|---|
| M | Plaintiff's Responses and Objections to Defendant TD Bank N.A.'s [sic] First Set of Written Discovery Requests to Plaintiff (May 24, 2023) |
| N | Subpoena to Testify at a Deposition in a Civil Action (July 6, 2023) |
| O | Defendant TD Bank USA, N.A.'s Notice of Deposition: Trans Union, LLC (July 6, 2023) |
| P | Declaration of Donald Wagner (Aug. 11, 2023) |
| Q | Notice of Deposition to Defendant TD Bank USA, N.A. (Aug. 16, 2023) |
| R | Emails Between Marwan Daher and Brian Melendez (Aug. 16 – Sept. 12, 2023) (subject line includes "Notice of TD's deposition") |
| S | Defendant TD Bank USA, N.A.'s Designations and Objections in Response to Notice of Organizational Deposition (Aug. 23, 2023) |
| T | Defendant TD Bank USA, N.A.'s Amended Answers to Plaintiff's Interrogatories (Sept. 5, 2023) |
| U | Third Declaration of Susan L. Wolf (Sept. 13, 2023) |
| V | Barnes & Thornburg LLP (https://btlaw.com/en/people/brian-melendez), Brian Melendez (accessed Oct. 31, 2023) |
| W | Barnes & Thornburg LLP, Fees |
| X | Order (ECF Doc. 74), *Miler v. TD Bank USA, N.A.*, No. 3:20-cv-00340-IM (D. Or. July 12, 2022) (text order only) |
| Y | Order (ECF Doc. 43), *Towle v. TD Bank USA, N.A.*, No. 0:22-cv-00624-PJS-TNL (D. Minn. Apr. 20, 2023) |

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on November 2, 2023.

_____
Brian Melendez